IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

SEP 0 3 2004

JAMES W. McCORMACK, CLERK
By: _____
DEP. CLERK

BASF AGROCHEMICAL PRODUCTS B.V.      )
and BASF CORPORATION                 )
                                     )
              Plaintiffs,            )     CASE NO. _3:04CV00311 GH_
                                     )
vs.                                  )
                                     )
DON ARNOLD, BRUCE ARNOLD,            )
DARREL CRISLER, WILSON CRISLER,      )
BRYAN FARMER, FCA TRUCKING, INC.,    )
DICK FARMER, STAN CRISLER,           )
AGRI MARKETING, INC.,                )
D & T FARMS PARTNERSHIP, and         )
JOHN DOES 1-25                       )
                                     )
              Defendants.            )

---

## MOTION FOR TEMPORARY RESTRAINING ORDER, FOR EXPEDITED DISCOVERY, AND FOR ENTRY OF PROTECTIVE ORDER

---

Plaintiffs BASF Agrochemical Products B.V. ("BASF Agro") and BASF Corporation ("BC") request that the Court (1) issue a Temporary Restraining Order, (2) permit expedited discovery, and (3) enter a Protective Order. In support thereof, Plaintiffs allege:

2

1. Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, Plaintiffs seek a Temporary Restraining Order against the defendants, ("Defendants"), enjoining them, and their agents, servants, employees, or anyone acting on their behalf:

(a) From planting, altering, destroying, tampering, or removing any of the seed, plant or other crop residue currently stored or maintained by a Defendant in warehouses, grain bins wherever situated, or any other location or facility;

(b) From destroying, tampering, transferring, removing or engaging in any activity in regards to any rice, harvested rice, or crop residue in Defendants' possession, custody or control that may result in the destruction, spoliation or secreting away of rice, harvested rice or crop residue embodying Plaintiffs' patented CLEARFIELD* technology in Defendants' possession or control.

(c) From moving, collecting, transferring, or obtaining in any other manner herbicide tolerant rice seed embodying Plaintiffs' patented technology;

(d) From destroying, transferring, removing or disposing of, in any way, records, whether retained in "hard" copy (such as on paper) or electronically, pertaining to infringement of the Patents-in-Suit, such as, but not limited to, purchase receipts, scale tickets, weigh tickets, chemical application records or seed and chemical invoices, seed and chemical sales, exchanges, credits, returns and purchases transaction records, seed bag purchase records or any other documents relating to Defendants' business operations;

(e) From any action that would hinder Plaintiffs' ability to identify the presence of Plaintiffs' patented herbicide tolerant rice seed technology that is either in the possession, custody or control of any Defendant, such as, but not limited to, disposing of, by any means, seed or crop residue before they can be subjected to testing for the presence of Plaintiffs' proprietary herbicide tolerance technology, or any tillage of the soil of any field farmed by any Defendant in his capacity as a grower;

(f)     From destroying or disposing of any business records of any Defendant, or any other entity through which any Defendant farms or that relate to Defendants' agriculturally-related endeavors, for the period beginning January 1, 2000 to the present;

(g)     From harvesting, selling, exchanging, shipping, or marketing any rice harvest from its tillable acreage containing the patented technology without first making a full inventory and accounting thereof during which representatives for Plaintiffs shall be in attendance; and

(h)     From saving for replanting any seed containing the patented technology, and from transferring any seed, containing the patented technology, from harvest to third persons in a condition that could be planted.

2.     Plaintiffs engage in, among other endeavors, the business of manufacturing, developing, licensing, and marketing agricultural products, including agricultural technology. These business activities demand substantial investment of time, money, and manpower in the development, patenting, licensing, and marketing of products.

3.     Plaintiffs acquired an exclusive license to novel technology related to the alteration of an enzyme produced by a plant  such as rice and other seed that causes the plants to be tolerant of imidazolinone agricultural herbicides. The seeds embodying this technology are marketed as CLEARFIELD* by Plaintiffs through sublicensed seed partners.

4.     The technology is protected by United States Patents, copies of which are attached as Exhibit A to the *Complaint.*

5.    The advantage of Plaintiffs' herbicide tolerance technology is to eliminate weeds and other plants, one of the most important of which is known as "red rice."

6.    CLEARFIELD* rice seeds embodying Plaintiffs' technology have already earned a good reputation, and are considered to be a significant technological advancement to growers. Maintaining the reputation and integrity of their products is essential to Plaintiffs' business operation.

7.    Plaintiffs' structured their business arrangements involving the distribution of CLEARFIELD* rice seeds in such fashion as to safeguard the long-term integrity of herbicide tolerant technology and to protect its patent rights.

8.    Seed companies that wish to use Plaintiffs' patented technology in their own seed varieties and growers who wish to plant Plaintiffs' patented technology must enter into sublicensing agreements with Plaintiffs which restrict the use of the product by the seed companies and subsequent purchasers and growers. These restrictions, in part, state that a grower purchasing from an authorized seed dealer may only use the seed as a "single commercial crop."

9.    Most importantly, these restrictions are essential to ensure the long-term viability of the CLEARFIELD* technology. One of the target weeds of the Plaintiffs' herbicide is red rice, a type of wild rice that shares a propensity to develop resistance to the herbicides to which cultivated rice is intentionally made tolerant through the

CLEARFIELD* technology.  If growers are permitted to save CLEARFIELD* rice seed for planting in contravention of the grower agreements they have signed, then it is inevitable that some red rice seed will also be saved.  It is then just as inevitable that some of this red rice seed will have developed tolerance to the CLEARFIELD* herbicides through natural mutation.  When this tolerant red rice is planted it will propagate, creating still further CLEARFIELD* herbicide tolerant red rice weed seeds and so on.  In this way, resistance of the weed to the herbicide will be accelerated and the effectiveness of the CLEARFIELD* system to keep cultivated rice fields as free of red rice as possible will be rapidly undermined, thus reducing the value of the herbicide to the rice industry as a whole and other farmers who wish to benefit from this technology.

## Circumstances of This Case

10.   In 2004, information came to light that indicated that certain Defendants may have undertaken or directed the saving of CLEARFIELD* rice produced from the 2003 rice crop and thereafter directed the replanting of such "saved" CLEARFIELD* rice in 2004, in violation of the sublicensing agreements and in contravention of Plaintiffs' patent rights.

11.   In light of this information, Plaintiffs conducted an investigation of Defendants' farming operations to either confirm or dispel the accuracy of this information, including interviewing various Defendants, reviewing seed and

herbicide purchase records, and the sampling and testing of rice from the 2004 rice crop. *See* Declaration of Gary Robnett, Exhibit C; Declaration of Randy Ouzts, Exhibit D.

12.   As part of this investigation, Plaintiffs discovered, and various Defendants expressly admitted to using, saving, and planting CLEARFIELD* rice seed during the 2004 growing season, without authority. Further, Plaintiffs received positive test results from samples of rice obtained from sampled fields.

13.   The results of Plaintiffs' investigation, including the various Defendants' admissions, constitute a *prima facia* showing that Defendants infringed upon Plaintiffs' CLEARFIELD* technology.

14.   Any planting with saved or unlicensed CLEARFIELD* seed technology by Defendants was done without Plaintiffs' authorization, thereby constituting conversion and infringement of Plaintiffs' patent rights.

15.   Contemporaneous with the filing of this motion, a true and accurate copy of the *Complaint, Motion* (with exhibits) and *Memorandum of Law in Support* will be sent *via* regular mail to each of the named Defendants.

16.   The issuance of a Temporary Restraining Order and expedited discovery is necessary to aid the Plaintiffs in the protection of the intellectual property rights and would not cause harm to Defendants. The unique nature of this situation dictates not simply a TRO, but a full accounting of current practices and

resources into innovative technology such as Plaintiffs' CLEARFIELD* seed technology.

19. Moreover, Plaintiffs request that Defendants or authorized agents thereof, accompany Plaintiffs' sampling crew and for the Defendants' agents to confirm in writing, on a field by field basis, that the Plaintiffs' sampling crew is sampling the correct fields. This is necessary to identify all presence or absence of the CLEARFIELD* rice seed planted thereon, and to provide accurate field identification information when establishing harvest yields. If such testing confirms the presence of the CLEARFIELD* herbicide tolerant mutation in the identified stores of rice, Plaintiffs request that the seed be stored and protected under seal pursuant to the requested Protective Order.

WHEREFORE, Plaintiffs respectfully request this Court to issue relief against Defendants, enjoining them, their agents, servants, employees and anyone acting on their behalf:

(a) From planting, altering, destroying, tampering, or removing any of the seed currently in warehouses, grain bins wherever situated, or any other facility;

(b) From destroying, tampering, transferring, removing or engaging in any activity in regards to any rice, harvested rice, or crop residue in Defendants' possession, custody or control that may result in the spoliation or secreting away of rice, harvested rice or crop residue containing Plaintiffs' patented CLEARFIELD* technology in Defendants' possession or control;

8

(c)    From moving, collecting, transferring, or obtaining in any other manner, the CLEARFIELD* gene or CLEARFIELD* seed;

(d)    From destroying, transferring, removing or disposing of, in any way, records of Defendant, individually, and any farming entities through which Defendant may farm, whether retained in "hard" copy (such as on paper) or electronically, pertaining to infringement of Plaintiffs' patents, such as, but not limited to, purchase receipts, scale tickets, weigh tickets, records or seed and chemical invoices, seed and chemical sales, exchanges, credits, returns and purchases transaction records, seed bag purchase records or any other documents relating to Defendants' business operations.

(e)    From taking any action that would hinder Plaintiff's ability to identify the presence of Plaintiffs' CLEARFIELD* crop seed technology that is either in the possession, custody or control of Defendants, such as, but not limited to, disposing of, by any means, seed or crop residue before they can be subjected to testing for the presence of Plaintiffs' proprietary gene herbicide tolerance, or any tillage of the soil of any field farmed by defendants in their capacities as a grower; and

(f)    From destroying or disposing of any business records of Defendant or any other entity through which Defendant farms or that pertain to Defendants' agriculturally-related endeavors for the period beginning January 1, 2000, to the present.

(g)    From harvesting, selling, exchanging, shipping, storing or marketing any rice from its tillable acreage without first having representatives from Plaintiff present to witness and monitor the activities and to take a full inventory and accounting thereof;

(h)    From saving for replanting any seed containing the patented technology, and from transferring any seed from harvest to third persons in a condition that could be planted;

(i)    To cooperate fully and completely with Plaintiffs' inspection crew and to provide direction to each field on which rice was planted;

(j)    To provide written assurance that all fields have been sampled;

(k)   To permit Plaintiff's representative(s) to monitor the harvesting of the fields and to preserve the entire yield on crops that are confirmed through scientific testing to contain the CLEARFIELD* technology;

(l)   To retain the rice harvest containing the CLEARFIELD* technology using accepted standards for preserving grain for future sales, and to permit Plaintiffs full access to the storage facility; and

(m)   For all other relief to which Plaintiffs are entitled.

BASF Agrochemical Products, B.V.
BASF Corporation

By: _____

Duff Nolan, Jr.
Nolan Henry, PLLC
411 S. Main
P.O. Box 68
Stuttgart, AR 72160
(870) 673-3200 Telephone
(870) 673-6996 Facsimile

*and*

Mark Murphey Henry
Nolan Henry, PLLC
204 South East Avenue
Fayetteville, AR 72701
(479) 695-1330 Telephone